```
         IN THE UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF ALABAMA
                   SOUTHERN DIVISION
```

ERIK KONTZEN,                        )
                                     )
    PLAINTIFF,                       )
                                     )
VS.                                  )        CV96-H-1037-S
                                     )
UNIVERSITY OF ALABAMA HOSPITAL,      )
                                     )
    DEFENDANT.                       )

FILED 97 JUL 24 AM 10:53 U.S. DISTRICT COURT N.D. OF ALABAMA

ENTERED JUL 24 1997

## MEMORANDUM OF DECISION

On April 30, 1997, defendant University of Alabama Hospital ("UAB") filed a motion for summary judgment. The motion was deemed submitted, without oral argument, to the court for decision as of June 20, 1997.[1]

Plaintiff commenced this action on April 22, 1996 by filing a complaint alleging that UAB discriminated against him in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. UAB answered the complaint on July 1, 1997, denying plaintiff's allegations of discrimination.

### I. FACTUAL BACKGROUND

Plaintiff Erik Kontzen was employed by UAB from 1981 until 1993. Plaintiff worked as an X-ray Service Technician in 1993. Kontzen Affidavit at ¶2. Plaintiff injured his back on August 22, 1990 when he hit his back against a door knob while hauling buckets of water at work. Following this accident, plaintiff received benefits from UAB's on the job injury program for the

---

[1] See the May 2, 1997 Order, amended by the court's May 21, 1997 order granting plaintiff's Motion for Extension of Time.



full allowable period of ninety days. <u>See</u> Kontzen depo. at 58-59. Then plaintiff applied for and received long term disability benefits through TIAA, UAB's long term disability carrier, until April of 1993. <u>See</u> Kontzen depo. at 61, 64. In April of 1993, TIAA advised plaintiff that it would be discountinuing his benefits based on its determination that plaintiff could perform sedentary work. <u>See</u> Complaint at ¶ 5. Plaintiff was restricted to lifting no more than ten pounds. <u>See</u> Kontzen depo. at 65.

Plaintiff then contacted Neil Blue, executive administrator of the Radiology Department at UAB, who advised plaintiff that there were no positions available that would meet his physician requirements. <u>See</u> Kontzen depo. at 65; Kontzen Affidavit at ¶ 3. Plaintiff also contacted John Cain, Director of UAB Hospital Personnel, who told plaintiff that he did not think there were any jobs available at the hospital that plaintiff was able to perform. <u>Id.</u> at ¶ 4. Then plaintiff went to see Joan Andrews, the Benefits Counselor for UAB he had worked with when he was first placed on disability. <u>Id.</u> At that time, Andrews told plaintiff that she was no longer handling his case. <u>Id.</u>

Plaintiff received a letter from UAB's Benefits Counselor Chris Rossi alerting him that UAB had been notified that he was no longer receiving long term disability benefits from TIAA and stating the following:

> Please understand that you are eligible to apply for rehire at the University for any position for which you are qualified. Job information is available through the normal applications process in the Hospital Personnel Office and the UAB Jobline . . .

<u>See</u> Kontzen depo. at 69 & Ex.4; Kontzen Affidavit at ¶ 4. Plaintiff states that over the next year he attempted to call

2

Rossi on several occasions, but Rossi was never in the office and failed to return any of Kontzen's calls. See Kontzen Affidavit at ¶ 4.

On March 22, 1995 plaintiff wrote J. Claude Bennett, the President of UAB at that time, a letter requesting assistance in securing new employment with UAB that would accommodate his limitations. See Kontzen Affidavit at ¶ 5; Exh. 6 to Kontzen depo. Dr. Bennett also served as plaintiff's treating physician from 1986 until 1990 following plaintiff's back injury. See Kontzen depo. at 53. Dr. Bennett referred plaintiff's request to Susan Barber, UAB's Vice President for Human Resources, asking that she provide plaintiff with a courtesy interview. See Barber depo. at 9-10, 12 & Exh.1.

Barber called plaintiff on April 13, 1995 and met with him on June 19, 1995 to listen to whatever plaintiff had on his mind. Id. at 14-16. According to plaintiff, at that time Barber stated that she would assist him in securing a position at UAB. Id. At that meeting Barber asked plaintiff to send her his resume. Id.; See Barber depo. at 20. Plaintiff states that he was assured by Barber that his sending of a resume was all that he needed to do in order to secure employment. Id. at ¶ 6.

Plaintiff sent Barber a resume[2], which she believes was forwarded to the employment office to go through their normal

---

[2] Barber received plaintiff's resume on September 26, 1995. See Barber depo. at 22. Defendant notes in its brief that this was three months after plaintiff's meeting with Barber. However, plaintiff contends that Barber asked him to send his resume in six to eight weeks following their meeting in June of 1995. See Kontzen Affidavit. The reason for any delay in sending the resume appears irrelevant to the consideration of this motion.

processes. See Barber depo. at 20, 22. Once Barber sent plaintiff's resume to the UAB Hospital employment office it served as the preliminary paperwork indicating his interest in working at UAB. Id. at 37. Based on this resume being on file, plaintiff became part of a pool of persons known by the employment office to be interested in working at UAB, Id. at 37-38.

According to Barber, generally the hiring process at UAB proceeds in the following manner: As the employment office gets requisitions on available positions, it screens through the resumes or applications on file and matches these resumes or applications with the job description for the particular position. Id. at 38. Then the employment office refers the top 10, 15 or 20 applicants to the department. Id. The particular department with a vacancy will screen through the information on those applicants forwarded from the personnel office and pick four of five individuals to interview. Id.

Barber conceded that once she routed plaintiff's resume to the employment office plaintiff was eligible for consideration as to any positions that he appeared qualified for based on his resume. See Barber depo. at 40. Barber admits that plaintiff was eligible for employment without taking any further action. Id.

Plaintiff suffers from spondylolisthesis, osteoarthritis, depression and a hepatitis C infection. See Kontzen depo. at 53-55. According to plaintiff's own testimony, he is currently receiving social security disability benefits and has been

4

receiving such benefits since late 1992. See Kontzen depo. at 14, 61.

Apart from the efforts discussed above, plaintiff never applied for any position at UAB between April of 1993, when plaintiff's long term disability benefits ended, and August of 1996. See Kontzen depo. at 70, 82-83, 95. Plaintiff has learned about vacancies at UAB from the Jobline and friends. In August of 1996 plaintiff applied for the position of floor space inventory control with the UAB campus. See Kontzen depo. at 69-70. Plaintiff learned about a vacancy in the film library at UAB from friends in the department and applied for that position. Id. at 75. According to plaintiff, he also learned of and applied for another vacant position at UAB, which was not identified by the information submitted to the court. Id.

## II.   LEGAL ANALYSIS OF PLAINTIFF'S CLAIM

### A.   Summary Judgment Standard

Defendant has moved for summary judgment in its favor on all claims asserted by plaintiff. Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings, which it believes demonstrate the absence

5

of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. <u>Celotex</u>, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. <u>Id.</u> at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See <u>Fitzpatrick</u>, 2 F.3d at 1115-17 (citing <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. <u>Fitzpatrick</u>, 2 F.3d at 1115. Once the moving party makes such a showing, the

burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  <u>Fitzpatrick</u>, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of

7

specific facts. <u>Lewis v. Casey</u>, ____ U.S. ____, 116 S. Ct. 2175 (1996).

**B. Americans With Disabilities Act**

The Americans With Disabilities Act ("ADA") prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Additionally, under the ADA an employer discriminates against an individual with a disability by not making reasonable accommodations for the known physical or mental limitation on an otherwise qualified individual's ability to perform the job, unless the reasonable accommodation would cause undue hardship. <u>Harris v. H & W Contracting Co.</u>, 102 F.3d 516, 519 (11th Cir. 1996); 42 U.S.C. § 12112(b)(5)(A). Based on the record before the court at this time, it is not clear whether plaintiff is claiming discrimination based on his disability in the application procedure/hiring process or alternatively claiming that UAB failed to reasonably accommodate his disability by allowing him to resume his employment with UAB in a position that he could perform with his physical limitations or asserting both claims.

In order to establish a prima facie case of discrimination in violation of the ADA, the plaintiff must prove that (1) he has a disability; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability.

8

Morisky v. Broward Co., 80 F.3d 445, 447 (11th Cir. 1996).[3] In its motion for summary judgment, UAB argues that plaintiff is not a "qualified individual with a disability" under the requirements of the ADA. The term "qualified individual with a disability" is defined as a person, who can perform the essential functions of the job previously held or the position desired, with or without reasonable accommodations. 42 U.S.C. § 12111(8). The court does not find defendant's argument concerning plaintiff's failure to file an application persuasive based on Barber's own testimony that by submitting his resume plaintiff was eligible for consideration for a job without any further action by plaintiff. See Barber depo. at 40.

In his deposition plaintiff admitted that he has been receiving social security disability insurance benefits ("SSI benefits") from late 1992 until the present. See Kontzen depo. at 14, 61. In order for a person to be eligible for SSI benefits, the individual must be under a "disability." 42 U.S.C. § 423(a)(1); 20 C.F.R. §§ 404.315(a) & 404.1505(a). For purposes of SSI, "disability" is defined as "the inability to do any substantial gainful activity."[4] 42 U.S.C. § 423(d)(1)(A); 20

---

[3] A plaintiff in an ADA case must demonstrate that the employer had either actual or constructive knowledge of the disability or considered the employee to be disabled. Gordon v. E.L. Hamm & Assoc., 100 F.3d 907, 910 (11th Cir. 1996). Knowledge of plaintiff's disability is not at issue in this case, based on the fact that plaintiff was injured on the job in 1988, received short term and then long term disability benefits provided through UAB and described some of his physical impairments in the letter seen by UAB's President and Vice President.

[4] The regulations define "substantial gainful activity" as "work that-- (a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

9

C.F.R. § 404.1505(a). A person must demonstrate that he has a severe impairment "which makes [him] unable to do [his] previous work or any other substantial gainful activity which exists in the national economy" in order to prove entitlement to SSI benefits. See 42 U.S.C. §423(d)(2)(A); 20 C.F.R. § 404.1505(a). Clearly plaintiff had to state to the Social Security Administration under oath that he was unable to perform his previous work, and unable to perform any substantial gainful activity in order to be awarded SSI benefits.

When plaintiff now asserts that he is a qualified individual capable of performing a desired new job with UAB, he is taking a position inconsistent to the one he has taken when seeking and continuing to accept SSI benefits. The Eleventh Circuit has recognized that the doctrine of judicial estoppel is based on the "principle that a party should not be permitted to abuse the judicial process by obtaining one recovery based first on affirming a certain set of facts and then another recovery based on denying the same set of facts." DeShong v. Seaboard Coast Line R.R. Co., 737 F.2d 1520, 1522, n.5 (11th Cir. 1984).

"Judicial estoppel is designed to prevent the perversion of the judicial process, and, as such, is intended to protect the courts rather than the litigants." Data General Corp. v. Johnson, 78 F.3d 1556, 1565 (Fed. Cir. 1996). Therefore, the decision of whether to invoke judicial estoppel lies within the court's discretion. Data General, 78 F.3d at 1565; McNemar v. Disney Store, Inc., 91 F.3d 610, 617 (3d Cir. 1996), cert. denied, ___ U.S. ___, 117 S. Ct. 958 (1997).

In order to qualify for the protections under the ADA, plaintiff must present evidence sufficient to convince this court that he is a qualified individual capable of performing the essential functions of the jobs desired, with or without reasonable accommodations. Plaintiff has previously held himself out to the SSA as being unable to perform any substantial gainful activity of any type.

Many courts faced with this inconsistency have estopped plaintiffs asserting an ADA claim from taking such an inconsistent position. <u>Budd v. ADT Security Systems, Inc.</u>, 103 F.3d 699 (8th Cir. 1996); <u>McNemar v. Disney Store, Inc.</u>, 91 F.3d 610, 616-18 (3d Cir. 1996), <u>cert. denied</u>, ____ U.S. ____, 117 S. Ct. 958 (1997); <u>Thomas v. Fort Myers Housing Authority</u>, 955 F. Supp. 1463 (M.D. Fla. 1997); <u>Lewis v. Zilog, Inc.</u>, 908 F. Supp. 931, 945 (N.D. Ga. 1995).[5] Likewise, courts have estopped plaintiffs from asserting that they are qualified individuals capable of performing a job when they have applied for and

---

[5] Recently the District of Columbia Circuit issued a contrary opinion in which it reasoned that estoppel was improper because the social security entitlement determination does not take into consideration whether an individual could perform a job with reasonable accommodations. <u>Swanks v. Washington Metropolitan Area Transit Authority</u>, 1997 WL 335143 (D.C. Cir. 1997). In this case the only necessary reasonable accommodations that plaintiff has clearly asserted is the need for sedentary work that would not require him to lift no more than ten pounds. This type of physical limitation on an individual's ability to work is exactly the type of information that the Social Security Administration takes into consideration when determining if an individual can either perform his past work or perform other work in jobs that exist in significant numbers in the national economy. <u>See</u> 20 C.F.R. § 404.1567(a)(defining sedentary work as involving "lifting no more than 10 pounds at a time" and instructing that this definition be used when making disability determinations). Thus, under the facts of this case, the <u>Swanks</u> reasoning is unsubstantiated.

received long term disability benefits.  <u>August v. Offices Unlimited, Inc.</u>, 981 F.2d 576 (1st Cir. 1992); <u>Beauford v. Father Flanagan's Boys' Home</u>, 831 F.2d 768, 770-71 (8th Cir. 1987), <u>cert. denied</u>, 485 U.S. 938 (1988); <u>Lewis v. Zilog, Inc.</u>, 908 F. Supp. 931, 945 (N.D. Ga. 1995); <u>Garcia-Paz v. Swift Textiles, Inc.</u>, 873 F. Supp. 547, 554-56 (D. Kan. 1995).

Based on the undisputed evidence that plaintiff received SSI benefits from late 1992 until the present along with the fact that he applied for and received long term disability benefits, the court concludes that as a matter of law plaintiff is estopped from asserting that he is a "qualified individual with a disability" under the ADA.  Thus, defendant UAB's motion for summary judgment is due to be GRANTED and judgment will be entered in favor of defendant University of Alabama Hospital on plaintiff's ADA claims.

DONE this 24th day of July, 1997.

*[signature]*
SENIOR UNITED STATES DISTRICT JUDGE